**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| GEORGE S. MICHAEL and SUSAN MICHAEL, | ) | |
| | ) | |
| | ) | Court No. 10 CV 3897 |
| Plaintiffs, | ) | |
| | ) | Judge Feinerman |
| v. | ) | |
| | ) | Magistrate Judge Cox |
| CHRISTINE LETCHINGER, R. DREW IRVIN, | ) | |
| GERALD NELLESSEN, PETER FRIEDMAN, | ) | **TRIAL BY JURY DEMANDED** |
| | ) | |
| Defendants. | ) | |

**DEFENDANTS' ANSWER AND AFFIRMATIVE DEFENSES
TO PLAINTIFFS' SECOND AMENDED COMPLAINT**

NOW COME Defendants, Christine Letchinger, R. Drew Irvin, Gerald Nellessen and Peter Friedman (collectively the "Defendants"), by and through their attorneys, James. L. DeAno, Laura L. Scarry and Howard P. Levine of DeANO & SCARRY, LLC, and for their Answers and Affirmative Defenses to Plaintiffs' Second Amended Complaint, state as follows:

**The Parties**

1.     Plaintiffs George S. Michael ("George") and Susan Michael ("Susan") (collectively, the "Michaels") are a married couple, residing in this district at 1955 Shore Acres Drive in Lake Bluff, Illinois (the "Property").

**ANSWER**:    Admit.

2.     Defendant Christine Letchinger is Village President of the Village of Lake Bluff, Illinois (the "Village").

**ANSWER**:    Admit.

3.     Defendant R. Drew Irvin is the Village Administrator of the Village.

**ANSWER**:    Admit.

4.      Defendant Peter Friedman is the Village Attorney of the Village.

**ANSWER**:    Admit.

5.      Defendant Gerald Nellessen is Building Code Supervisor of the Village.

**ANSWER**:    Admit.

6.      This Court has subject matter jurisdiction over the civil rights claims alleged herein under 28 U.S.C. §§ 1331 and 1343. This Court has subject matter jurisdiction over the Illinois state law claims alleged herein under 28 U.S.C. § 1367 because those claims are so related to the civil rights claims over which this Court has original jurisdiction that they form part of the same case or controversy.

**ANSWER**:    Defendants admit that the Court has subject matter jurisdiction over Plaintiffs' federal claims but deny any violation of the Constitution or of any federal law. Plaintiffs do not plead any Illinois state law claims and Defendants therefore deny that the Court has jurisdiction over Plaintiffs' state law claims because no state law claims are pled in the Second Amended Complaint.

7.      This Court has personal jurisdiction over the defendants, and venue is proper here under 28 U.S.C. § 1391 because all of the defendants reside in this district, the events giving rise to the claims occurred in this district, and the property that is the subject of this action is situated in this district.

**ANSWER**:    Defendants admit that the Court has personal jurisdiction over Defendants but deny any violation of the Constitution or of any federal law.

8.      Susan suffers from multiple sclerosis, a condition with which she was first diagnosed in 2000. This condition is subject to exacerbation by stressful situations. Susan also suffers from a complication of multiple sclerosis known as "autonomic dysfunction," a condition with which was first diagnosed in 2005. This condition causes Susan's blood pressure to drop suddenly in certain situations, including situations in which she is subjected to increased stress, the result of which can be sudden cardiac death.

**ANSWER**:    Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 8 and therefore neither admit nor deny same.

9.      In 2003, the Michaels, who were living in the Chicago area with their three daughters, were looking to purchase a new home. Mindful of the fragility of Susan's medical condition and the need to minimize, to the extent possible, her encounters with stressful situations, the family sought to relocate to a peaceful and calming atmosphere. With that goal in mind, in October 2003, they acquired the Property, which abuts a bluff overlooking Lake Michigan.

**ANSWER**:    Defendants admit that Susan Michael purchased the property at 1955 Shore Acres Drive in 2003. Defendants are without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 9 and therefore neither admit nor deny same.

10.      The Michaels are of Armenian descent and are life-long members of the Armenian Orthodox Church. Both their ethnicity and their religion placed them distinctly in the minority amongst the Lake Bluff populace.

**ANSWER**: Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 10 and therefore neither admit nor deny same.

11. Susan's debilitating disease made it difficult for the family to continue to make the trip to Chicago to attend services at St. Gregory the Illuminator Armenian Church, where they were life-long parishioners. An additional hindrance was the fact that the church lacked handicapped accessibility.

**ANSWER**: Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 11 and therefore neither admit nor deny same.

12. Because of the importance to them of their religion and religious heritage, the Michaels explored the possibility of building a chapel within their home. Toward that end, in June 2004, they engaged an architect, Harry Burroughs, who suggested that a racquetball court that was located in the house could be suitably adapted for that use.

**ANSWER**: Defendants admit that Plaintiffs have a racquetball court in their home that Plaintiffs contend was used as a church by the Armenian Church of Lake Bluff. Defendants admit that Plaintiffs have at times retained architect Harry Burroughs. Defendants are without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 12 and therefore neither admit nor deny same.

13. On July 27, 2004, Burroughs called Brad Burke, the Assistant Village Administrator of the Village, and inquired whether the Village would require a special use permit if religious services were conducted in the proposed chapel. Burke instructed Burroughs to submit drawings showing the planned use so that it could be determined whether a special use

permit would be required. Burroughs prepared the requested drawings, which on information and belief, were tendered to the Village in 2004 and/or 2005.

**ANSWER**:    Denied.

14.    The Michaels and their daughters moved into the Property in or about October 2004.

**ANSWER**:    Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 14 and therefore neither admit nor deny same.

15.    Over the next 44 months, the Michaels received no notice from the Village that the Village would require a special use permit in connection with the religious use about which Burroughs had inquired.

**ANSWER**:    Denied. Defendants state further that the Church's treasurer Mark Geissler was informed in December 2006 and the Church's attorney John Klytta was informed in 2008 that a special use permit would be required to operate a church on the Property.

16.    The Property includes a private beach located beyond the bluff. At the time the Michaels acquired the Property, the sole means of reaching the beach was to descend the bluff using a crude and difficult-to-navigate stone stairway.

**ANSWER**:    Defendants admit that the Property includes a private beach located beyond the bluff but Defendants are without knowledge or information sufficient to form a belief as to the truth of the remainder of the allegations in Paragraph 16 and therefore neither admit nor deny same.

17.    In order to enable Susan to have access to the beach area, in the spring of 2005, George constructed wooden stairway, an electric tram that could carry Susan up and down the

stairway, and a wooden deck at the bottom of the stairway, near the private beach. The Village required a permit for the installation of the tram, but not for the construction of the stairway or deck.

**ANSWER**: Defendants admit that in 2005 Plaintiffs constructed a wooden stairway, electric tram, and wooden deck at the bottom of the stairway near the private beach on the Property. Defendants are without knowledge or information sufficient to form a belief as to the allegation that the construction was in order to enable Susan to have access to the beach area and therefore neither admit nor deny same. Defendants admit that the Village required a permit for the installation of the tram. Defendants deny the remaining allegations of paragraph 17 and state further that the Village did require permits for the construction of the stairway and deck.

18. When the Michaels acquired the Property in 2003, it had a free-standing two-car garage located about 100 yards from the house. Within the garage was an area for parking cars and a separate area with a bathroom (with a toilet, a shower, and a sink) and a small kitchenette. On information and belief, the bathroom and the kitchenette were several decades old at the time the Michaels acquired the Property.

**ANSWER**: Defendants admit that a free-standing accessory structure ("Accessory Structure") was located approximately 100 yards from the primary structure on the Property as of 2003. Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 18 and therefore neither admit nor deny same.

19. In the summer of 2006, a tree on the Property was struck by lightning and fell on the garage, resulting in extensive damage and leaving the interior of the structure exposed to the elements. The Michaels thereupon undertook work that both repaired the garage and resulted in the garage being enlarged by 488 square feet. That work was completed on July 6, 2006.

**ANSWER**:     Defendants admit that Plaintiffs renovated the Accessory Structure on the Property in 2006 without obtaining required building permits or zoning relief. Defendants are without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 19 and therefore neither admit nor deny same.

20.     On or about October 4, 2006, the Village issued to the Michaels a notice of violation for "install[ing] an addition and remode[ling] the existing detached garage" without a permit. The fine imposed by the Village was $1,500.00, which the Michaels timely paid on October 6, 2006.

**ANSWER**:     Defendants state that the October 4, 2006 notice speaks for itself. Defendants admit that on or about October 4, 2006, the Village issued to the Michaels a notice of violation for "install[ing] an addition and remode[ling] the existing detached garage" without a permit and state further that a total of three separate violations of the Village Code occurred at that time resulting in fines totaling $2,350. Defendants deny the remaining allegations of paragraph 20.

21.     On or about October 12, 2006, the Village's Building Code Supervisor and Deputy Building Commissioner, Andy Orsini, inspected the garage, both exterior and interior, viewing the shower, sink, toilet, and kitchenette.

**ANSWER**:     Defendants deny the allegations of paragraph 21 and state further that while Orsini viewed the exterior of the Accessory Structure on a site visit in September 2006, Orsini never inspected or approved the bathroom of the Accessory Structure or any shower therein.

22.     Because the enlargement of the garage resulted in the garage extending closer to the property line, it was in violation of the Village's requirements concerning set-back distances

from property lines. Orsini instructed George to supply the Village with a survey and drawings of the work and to apply for a zoning variance for the nonconforming setback.

**ANSWER**: Defendants admit that Plaintiffs renovated the accessory structure in violation of the Village Code by not obtaining required building permits and not obtaining the required zoning relief to encroach into the setback. Defendants admit that the Village informed George that he would need to apply for variations from the Village's setback regulations in order to permit this encroachment into the setback including, among other information, a survey of the Property and drawings depicting the work performed on the Accessory Structure. Defendants deny the remaining allegations in paragraph 22.

23.     George submitted an application for the zoning variance on October 19, 2006 and an additional application on December 6, 2006. On information and belief, at or around the time George submitted those applications, the Michaels' architect, Burroughs, submitted to the Village the drawings requested by Orsini, which included depictions of the pre-existing shower in the garage.

**ANSWER**:     Defendants admit that Plaintiff George Michael submitted an application for the zoning variance on October 19, 2006, which the Plaintiffs subsequently withdrew. Later, after the work on the Accessory Structure was performed illegally, Plaintiffs submitted an additional application on December 6, 2006. Defendants deny the remaining allegations in paragraph 23 and state further that the drawings of the interior of the Accessory Structure prepared by Burroughs that were submitted in support of the December 6, 2006 application and subsequently incorporated into the Village Ordinance 2007-10 which granted variations from the setback regulations did not depict a shower in the Accessory Structure.

24.     On December 18, 2006, prior to advising the Michaels regarding the status of their application for a zoning variance for the nonconforming setback, the Village served the Michaels with a Notice of Ordinance Violation for still having on their Property the addition to the garage that had been constructed without a permit. The notice assessed a fine of $3,550.00, a penalty of $50.00 per day for the 71 days preceding the date of filing of the application *(i.e.,* September 27 to December 6, 2006).

**ANSWER**:     Admit. Defendant states further that Plaintiffs' failure to obtain the necessary permits pursuant to the Village's building regulations to construct the renovations to the Accessory Structure were separate and distinct violations from Plaintiffs' concurrent violation of the setback regulations in the Village's Zoning Code.

25.     George thereafter reached an oral agreement with Orsini to pay $3,000 in satisfaction of the December 18, 2006 Notice of Violation.

**ANSWER**:     Defendants admit that the Village's Building Commissioner reduced the $3,550 fine described in the December 18, 2006 Notice of Violation to $3,000. Defendants deny the remaining allegations in paragraph 25.

26.     The Michaels' attorney, George Covington, thereupon delivered to Orsini a check payable to the Village in the amount of $3,000, which the Village deposited on or about January 23, 2007.

**ANSWER**:     Admit.

27.     On information and belief, Village President Christine Letchinger was in timely fashion advised of Orsini's agreement to settle, George's tender of payment, and the Village's depositing of the check.

**ANSWER**:     Denied.

28.     On or about February 9, 2007 Orsini resigned from the position of Village Code Supervisor, a position that was thereupon assumed by Gerald Nellessen.

**ANSWER**:     Admit.

29.     On April 9, 2007 members of the Village Board of Trustees, as well as Village President Letchinger, personally viewed the freestanding garage, including the interior portion with the shower, sink, and kitchenette. Later that day the Board voted unanimously to grant the requested setback variation. At that meeting the Michaels' attorney, George Covington, made a presentation to the Board members, as well as Letchinger and Friedman, that included a large onscreen projection of Burroughs' drawings depicting the pre-existing shower in the garage.

**ANSWER**:     Defendants admit that in the spring of 2007 Village President Letchinger personally viewed the Accessory Structure but did not observe any shower in the Accessory Structure. Defendants admit that George Covington made a presentation to the Board members, including Letchinger and Friedman, on April 9, 2007, but deny that Covington's presentation included a large onscreen projection of Burroughs' drawings depicting any shower in the Accessory Structure. Defendants admit that on May 14, 2007, the Village Board approved Ordinance 2007-10 granting variations from the Village's setback regulations by a vote of 5 to 1. Defendants deny the remaining allegations in paragraph 29.

30.     On or about April 10, 2007, Covington and the Village's Building Commissioner, Kent Street, agreed to payment by the Michaels of a $7,700 fine in resolution of the pending garage issues. This fine was calculated on the basis of a $50.00 per diem penalty for 154 days (*i.e.,* from July 6, 2006 through December 6, 2006). Street told Covington that the payment would not be deposited until the permit for the setback variation was issued.

**ANSWER**: Admit.

31.     On April 11, 2007 Street sent Covington a letter confirming that George Michael had agreed to pay a fine of $7,700 "for violating the zoning code by constructing an addition to his garage without zoning approval." Covington countersigned the letter on April 17, 2007 and returned it to Street with the $7,700 payment. Covington's cover letter accompanying the payment memorialized that the payment satisfied "all penalties for zoning and building violations arising out of or related to the construction of the addition to the freestanding garage." The letter further stated: "As we have discussed, it is also my understanding that you will hold this check until such time as the Village has issued variations for the front yard and side yard setback violations resulting from that addition, and such variations are final.     If my understanding is incorrect or incomplete, please let me know immediately so that I can retrieve the check."

**ANSWER**:  Defendants state that the April 11, 2007 Street letter speaks for itself and therefore neither admit nor deny the allegations of paragraph 31. The Defendants further state that this precise issue was litigated by the Plaintiffs in the state court and that the court there denied the Plaintiffs' motion to dismiss in which the Plaintiffs unsuccessfully argued that the April 11, 2007 letter somehow allowed the Plaintiffs  to maintain the Accessory Structure as additional living quarters on the Property.

32.     On or about April 18, 2007 George contacted Building Code Supervisor Gerald Nellessen and asked if he required a final inspection of the garage structure. Nellessen stated "that was on Andy [Orsini]' s watch. I had nothing to do with it." So, no final inspection was done.

**ANSWER**: Denied. Defendants state further that Plaintiffs never requested a final inspection of the Accessory Structure.

33.     In or about February 2007 the racquetball court in the Michael residence was converted to a chapel as depicted in the drawings previously prepared by Burroughs.

**ANSWER**: Defendants admit that George Michael attested to the Illinois Department of Revenue that the racquetball court was used as a church by the Armenian Church of Lake Bluff. Defendants admit that when deposed in the IDOR proceeding Harry Burroughs presented plans indicating the use of the racquetball court as a "chapel" but states further that no plans indicating the use of the racquetball court as a chapel were ever provided to the Village. Defendants are without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 33 and therefore neither admit nor deny same.

34.     In addition to constructing the chapel, George also arranged for the incorporation of a formal church entity, which was given the name "Armenian Church of Lake Bluff" (the "Church"). The Property was conveyed to the Church on March 22, 2007.

**ANSWER**:     Defendants admit that George Michael created an entity that was given the name "Armenian Church of Lake Bluff." Defendants admit that Susan Michael conveyed the Property by quit claim deed to the Armenian Church of Lake Bluff on March 22, 2007. Defendants deny the remaining allegations in Paragraph 34.

35.     On or about April 10, 2007 the Church filed an application for non-homestead property tax exemption. The Village subsequently intervened in opposition to this application. On June 12, 2008, the Illinois Department of Revenue issued a Non-homestead Property Tax Exemption Certificate over the Village's objection.

**ANSWER**:     Admit.

36.     On June 25, 2008, the Village filed a protest of the Department's decision, and, on July 8, 2009, the Illinois Department of Revenue issued a 'Notice of Decision' reversing its

issuance of the exemption. On July 31, 2009, the Church filed an administrative review action challenging the Department's decision.

**ANSWER**:    Admit.

37.    The amount of property taxes that the Village stood to gain for the year 2007 in challenging the exemption was approximately $2,200. In the course of litigating the tax exemption in administrative and state court proceedings, it is believed that the Village incurred in excess of $100,000 in litigation expenses.

**ANSWER**: Defendants deny that the amount of property taxes that the Village stood to gain for the year 2007 in challenging the exemption was approximately $2,200 and state further that the amount of property taxes that the Village would have received in the year 2007 absent the exemption was approximately $8,300 and that the sham exemption, left unchallenged, would have allowed Plaintiffs to avoid paying the approximate amount of $77,822 in property taxes for each year the exemption remained in place. Defendants admit that in the course of challenging the Plaintiffs' sham tax exemption, including the Plaintiffs' numerous unsuccessful appeals up to and including the Illinois Supreme Court, the Plaintiffs caused the Village to incur in excess of $100,000 in litigation expenses.

38.    On or about June 24, 2008, two weeks after the Illinois Department of Revenue issued the tax exemption, Nellessen, accompanied by an armed police escort, served Susan with a letter from Village Administrator Irvin (who also served as Village Building Commissioner) stating that the operation of the Church was a Zoning Violation because the Property was zoned for residential use only. The letter further stated that, in December 2006, Marc Geissler (the Michaels' accountant) was "specifically informed by the Village" that the

Church required "specific zoning relief and Village Board approval." On information and belief, this statement was untrue.

**ANSWER**:    Defendants state that the June 24, 2008 Irvin letter speaks for itself and therefore neither admit nor deny the allegations of paragraph 38. Defendants deny the last sentence of paragraph 38.

39.    In the month of June 2008, at Irvin's direction, the Village's police department conducted surveillance of the Michael residence on Sunday mornings for the purpose of observing whether church services were being conducted inside.

**ANSWER**:    Defendants admit that the Village's police department observed the entrance to the Property on Sunday mornings in the month of June 2008 in order to determine whether church services open to the public were being conducted inside the Property as represented by George Michael. Defendants deny the remaining allegations of paragraph 39.

40.    On July 18, 2008, the Village filed in Illinois state court a Verified Complaint for Ordinance Violations and Monetary Fines against the Church, George, and Susan in Case No. 08 CH 2706. The Complaint alleged that the Church amounted to an impermissible use of the Property for which a special use permit had not been applied for or received. The Complaint demanded that a *per diem* fine of $250 be assessed beginning March 22, 2007, totaling $115,000.

**ANSWER**:    Defendants state that the Complaint speaks for itself and therefore neither admit nor deny the allegations of paragraph 40.

41.    In or about September 2008, Susan acquired a walker in order to increase her mobility. In that same month the Michaels connected a handicapped ramp to the beach-front

deck that had been constructed in 2005 without the Village requiring any permits or approvals. The Michaels also expanded the deck to accommodate the handicapped ramp.

**ANSWER**: Defendants have insufficient knowledge to admit or deny whether in or about September 2008, Susan acquired a walker in order to increase her mobility or whether in that same month the Michaels connected a handicapped ramp to the beach-front deck that had been constructed in 2005 and therefore neither admit nor deny same. Defendants deny the remainder of the allegations of paragraph 41.

42. On or about September 25, 2008, Nellessen, the Village's Building Code Supervisor, accompanied by an armed police escort, served Susan with a Stop Work Order which recited that an addition to the deck had been constructed without submitting construction documents and without obtaining a permit.

**ANSWER**: Defendants admit that on September 25, 2008, Nellessen and a Lake Bluff police officer hand delivered a Stop Work Order, which Stop Work Order speaks for itself. Defendants deny the remaining allegations of paragraph 42.

43. On or about September 26, 2008, Nellessen advised George that, in addition to obtaining a permit he would have to obtain expert verification that the extension to the deck did not violate any applicable "wetland requirements."

**ANSWER**: Denied. Defendants state further than Nellessen advised Mr. Burroughs in October, 2008 that, in addition to obtaining a permit, Plaintiff would have to obtain verification of the location of the deck in relation to the high water level for the Property.

44. On or about September 26, 2008, Burroughs submitted to the Village an Application for Building Permit for "expansion of existing deck at base of tram with handicapped accessible ramp for wheelchair."

**ANSWER**:     Admit.

45.     George also engaged the firm of Hey and Associates (the same firm used by the Village in conducting wetland studies) with regard to the purported wetland issue raised by Nellessen.

**ANSWER**:     Defendants admit that Plaintiff George Michael engaged the firm of Hey and Associates. Defendants deny the remainder of the allegations in paragraph 45.

46.     On October 7, 2008, Irvin issued to the Church a citation in the form of a letter from Irvin for violating the September 25, 2008 stop work order. The citation was assigned Docket No. 08 OV 9302. The activity for which the citation was issued consisted of a worker moving a gas grill and putting up a string of lights. Neither activity required a building permit and therefore did not violate the stop work order. The letter, which purported to impose a fine of $3,900, was served on Susan at the Michael residence.

**ANSWER**:     Defendants admit that on October 7, 2008, Irvin issued to the Church a citation in the form of a letter from Irvin for violating the September 25, 2008 stop work order, that the citation was assigned Docket No. 08 OV 9302 and that the letter, which imposed a fine of $3,900, was hand delivered at the Michael residence. Defendants deny the remaining allegations of paragraph 46.

47.     On November 13, 2008, Hey and Associates issued a report making clear that the addition to the deck was exempt from wetland requirements. The report indicated that such an alleged issue — wetland requirements relative to an extension to a deck — had never in their experience been raised previously by any municipality. That report was provided to the Village on November 19, 2008.

**ANSWER**:    Defendants state that the November 13, 2008 report speaks for itself. Defendants admit that the November 13, 2008 report was provided to the Village on November 19, 2008. Defendants deny the remaining allegations of paragraph 47. Defendants state further that the Village neither required nor requested that Defendants conduct any analysis regarding wetland requirements.

48.    On December 3, 2008, Nellessen next issued to George a notice with fourteen demands regarding the handicapped ramp. This included a demand for compliance with Illinois accessibility requirements that have no applicability to a residence. On June 2, 2010, the number of demands was dropped to ten and then to four, which the Michaels complied with. Neither Nellessen nor anyone else from the Village came to perform a final inspection. In the end Nellessen's demands ended up costing the Michaels more than $10,000 for architectural drawings, Hey & Associates documents, surveys of ground and water draining and aerial photos.

**ANSWER**:    Defendants admit that on December 3, 2008, Nellessen issued to George a notice and that the notice speaks for itself. Defendants admit that on June 2, 2010, the number of requirements was dropped to ten and then to four following additional information provided by the Plaintiffs. Defendants deny that Plaintiffs ever requested a final inspection. Defendants have insufficient knowledge to admit or deny the remainder of the allegations of paragraph 48 and therefore neither admit nor deny same.

49.    On or about November 24, 2008, in connection with the administrative proceeding concerning the property tax exemption, Village Administrator Ryan Waller, Village Attorney Peter Friedman, and Friedman's associate Andrew Fiske conducted an inspection of the

Michael residence and the free-standing garage. During that inspection Friedman took photographs of the pre-existing shower in garage.

**ANSWER**:    Defendants admit that on or about November 24, 2008, in connection with the administrative proceeding before the Illinois Department of Revenue concerning the property tax exemption filed by the Armenian Church of Lake Bluff, Assistant Village Administrator Ryan Waller, Village Attorney Peter Friedman, and Friedman's associate Andrew Fiske conducted an inspection of those portions of the Michael residence purportedly used by the Armenian Church of Lake Bluff, including the Accessory Structure. Defendants state further that counsel for Plaintiffs, Mark Belongia and Margaret Borcia, also attended the inspection. Defendants deny all remaining allegations in paragraph 49.

50.    On December 10, 2008, also in connection with that administrative proceeding, Friedman took George's deposition. During his deposition George testified as to the existence of the shower in the garage.

**ANSWER**:    Defendants admit that on December 10, 2008, also in connection with that administrative proceeding, Mr. Friedman took Mr. Michael's deposition and that said deposition speaks for itself and therefore neither admit nor deny the remaining allegations of paragraph 50.

51.    On or about October 20, 2009, Irvin issued to the Michaels and to the Church a letter notifying them of a zoning violation for maintaining a purportedly illegal living quarters in an "accessory structure" (*i.e.,* the freestanding garage). Irvin's letter quoted a section of the Village's zoning regulations:

> Living quarters shall not be permitted in an accessory building. An accessory building or structure shall be considered to have living quarters if an accessory building or structure has heat, light, and bathing or shower facilities.

The letter went on to state:

> [T]he bathing or shower facilities that have been constructed within the accessory structure are violations of Lake Bluff Building Code because they were not included on any plans that you or your contractors submitted to the Village. . . .

**ANSWER**: Defendants deny that the Accessory Structure is "a free-standing garage," and state further that the Accessory Structure was identified by the Armenian Church of Lake Bluff as a place where religious activities for children were held in what the Church termed as "Kids World." Defendants state that the letter speaks for itself and therefore neither admit nor deny the remaining allegations of paragraph 51.

52. On information and belief, on several occasions drawings plainly depicting the shower had been submitted to the Village on behalf of the Michaels.

**ANSWER**: Defendants deny that "on several occasions" drawings plainly depicting the shower had been submitted to the Village on behalf of the Michaels. Defendants admit that, after George Michael sought and received zoning relief for the Property pursuant to Ordinance No. 2007-10 based on plans that depicted the Accessory Structure without a shower, Plaintiffs subsequently sought permission to install two entry pillars for the Property and that the shower in the Accessory Structure was depicted on plans submitted in support of that application.

53. Prior to Irvin's October 20, 2009 letter, the last communication between George and the Village regarding the garage was the April 18, 2007 telephone call from George to Nellessen asking if a final inspection of the garage would be needed.

**ANSWER**: Denied. Defendants state further that multiple communications took place between Plaintiffs' representatives and the Village concerning the Accessory Structure, including

without limitation the arrangements for the inspection of the Property and the Accessory Structure on November 24, 2008.

54.     On December 31, 2009, Village Attorney Friedman filed a Complaint in Illinois state court, Case No. 09 CH 6241, naming the Church, George, and Susan as defendants. The Complaint alleged that because the garage included a shower, it constituted living quarters, which were prohibited in "accessory structures" such as the garage, and demanded judgment for fines totaling $577,500. The Complaint falsely alleged that the defendants had "constructed the Bathing Facilities" located in the garage.

**ANSWER**:    Defendants admit that the Village filed a Complaint in the Circuit Court of Lake County on December 31, 2008, captioned as Case No. 09 CH 6241 and naming the Church, George, and Susan as Defendants. Defendants state further that the Complaint speaks for itself and therefore neither admit nor deny the remaining allegations of paragraph 54.

55.     Friedman thereafter demanded that the water lines for the shower be capped, the shower drain cemented, and the shower doors removed. The Michaels engaged a licensed plumber to perform this work. Upon the completion of this work, the shower floor was tiled over the drain. Friedman thereafter demanded that the floor tiles be ripped up and the work be performed again on account of the fact that a Village representative did not see the work being performed. The Michaels thereupon had the plumber tear open the tiled floor and perform the work again while Nellessen stood by for two hours and observed the operation. Friedman subsequently relented on his demand that the shower doors be removed.

**ANSWER**:    Defendants admit that, pursuant to a settlement conference conducted before Judge Hoffman of the Lake County Circuit Court, and in response to Plaintiffs' inquiry as to how the shower could be brought into compliance with the Village Code, the Village

informed George that upon the issuance of a building permit, if the shower water lines were capped, the shower drain cemented, and the shower doors removed, the Accessory Structure would be in compliance with the Village Code. The Village lacks sufficient information to admit or deny that the Michaels engaged a licensed plumber to perform this work and therefore neither admit or deny same. Defendants admit that the shower floor was tiled over after the initial work of the Michaels' plumber was completed, and state further that this work was conducted without the required building permit and was not completed in compliance with the Village Code. Defendants admit that the Village required the removal of the tiled floor to evaluate whether this initial work performed was in compliance with the Village Code, and upon confirming that the work was not done in compliance with the Code, including that the shower lines were not permanently capped and the shower drain was stuffed with a rag rather than being cemented, informed the Michaels that the work was not code-compliant and would have to be re-done in order to be in compliance. Defendants admit that Nellessen observed the Michaels' contractor perform this remedial work but lack sufficient information to admit or deny that that work took two hours and therefore neither admit nor deny same. Defendants admit that after the shower lines were permanently capped and the shower drain cemented, the Village did not require the removal of the shower doors. Defendants deny any remaining allegations in paragraph 55.

56.     The citation issued in connection with the handicap ramp was subsequently consolidated with the lawsuit concerning the shower in the garage.

**ANSWER**:     Admit. Defendants state further that these lawsuits are also consolidated with the lawsuit alleging that the Plaintiffs operated a church on the Property without a special use permit, and that all of these cases remain pending in Lake County Circuit Court.

## COUNT I
### 1983 CLAIM ON BEHALF OF GEORGE AND SUSAN MICHAEL
### AGAINST LETCHINGER, IRVIN, NELLESSEN, AND FRIEDMAN

57.     The Michaels incorporate by reference paragraphs 1 through 56 above.

**ANSWER**:   Defendants incorporate by reference their answers to paragraphs 1 through 56 above as if set forth fully herein.

58.     On information and belief, subsequent to the Church's April 10, 2007 filing of an application for a non-homestead property tax exemption, Letchinger, Irvin, Nellessen, and Friedman (collectively, the "Village Officials") agreed upon a plan to utilize the Village's building code and zoning regulations as a means of making a series of discriminatory, improper, unreasonable, excessive and selectively-enforced demands, requirements, impositions and prosecutions upon and against the Michaels.

**ANSWER**:   Denied.

59.     These actions included the following:

(a)     Irvin's issuance on October 20, 2009 (less than three months after the Church filed an administrative review action concerning the property tax exemption) of a $577,500 notice of violation for a shower that the Village had known of since at least 2006 (and that Letchinger and Friedman had known of since at least 2007);

(b)     Friedman's filing of a Complaint concerning the shower (i) falsely alleging that the Michaels had constructed the shower, (ii) notwithstanding the April 2007 settlement concerning the garage, and (iii) notwithstanding the fact that the shower had been in existence for decades;

(c)     Nellessen's and Irvin's issuance of unreasonable, unfounded, and improper demands and orders concerning the deck and handicapped ramp; and

(d)     Friedman's filing of a $115,000 Complaint alleging that the Church constituted an impermissible use, notwithstanding the fact that the Village had, over a period of years, led the Michaels to believe that the Village would not require a special use permit.

**ANSWER**:    Defendants admit that Irvin issued an October 20, 2009 letter and state that the letter speaks for itself. Defendants admit that the Village filed complaints concerning the operation of the Church on the Property without a special use permit, the illegal construction of the deck and ramp on the Property, and the improper and unauthorized bathing facilities in the Accessory Structure and state that those pending complaints speak for themselves. Defendants deny the remaining allegations of paragraph 59.

60.    On information and belief, the purpose of these actions was:

(a)    to collect building code and zoning fines as a means of recouping the legal expenses incurred by the Village in challenging the property tax exemption;

(b)    to systematically harass, punish and retaliate against the Michaels on account of the filing of the application for the property tax exemption;

(c)    to systematically harass the Michaels as a means of driving them from the Village on account of their religion and/or ethnicity;

(d)    to systematically harass the Michaels as a means of driving them from the Village on account of the Village Officials' personal animus toward the Michaels; and/or

(e)    to prevent the Michaels from practicing their faith.

**ANSWER**:    Denied.

61.    The conduct of the Village Officials described above was committed while they were acting under color of state law.

**ANSWER**:    Denied.

62.    The actions of the Village Officials described above were undertaken for reasons wholly unrelated to any legitimate state or municipal objective.

**ANSWER**:    Denied.

63.    On information and belief, the Village Officials, through their improper, unreasonable, excessive and selectively-enforced demands, requirements, impositions and prosecutions, have treated the Michaels differently from other Village residents who are

subject to the Village's building code and zoning regulations. On information and belief, no other Village residents have been subjected to similar treatment. This difference in treatment is without any rational basis or, on information and belief, is the result of personal animus against the Michaels or anti-Armenian animus, or anti-Armenian Orthodox animus.

**ANSWER**:     Denied.

64.     The foregoing conduct deprived the Michaels of: equal protection of laws in violation of the Fourteenth Amendment of the United States Constitution, the right to substantive due process in violation of the Fourteenth Amendment of the United States Constitution; and their rights under the Free Exercise Clause of the First Amendment of the United States Constitution.

**ANSWER**:     Denied.

65.     The Village Officials' foregoing conduct was the direct, proximate, and foreseeable cause of the injuries and consequential damages to the Michaels.

**ANSWER**:     Denied.

66.     The aforementioned acts were in violation of 42 U.S.C. § 1983.

**ANSWER**:     Denied.

67.     The deprivation of plaintiffs' rights by the Village Officials was willful, knowing, and capricious. An award of punitive damages is warranted against these defendants.

**ANSWER**:     Denied.

**WHEREFORE**, Defendants, CHRISTINE LETCHINGER, R. DREW IRVIN, GERALD NELLESSEN and PETER FRIEDMAN, deny that Plaintiffs are entitled to any

relief or judgment whatsoever against them.

## AFFIRMATIVE DEFENSES

NOW COME Defendants, CHRISTINE LETCHINGER, R. DREW IRVIN, GERALD NELLESSEN and PETER FRIEDMAN, by and through their attorneys, James L. DeAno, Laura L. Scarry and Howard P. Levine of DeANO AND SCARRY, LLC., and pleading affirmatively, aver the following defenses:

### First Affirmative Defense
### Qualified Immunity

1. Plaintiffs, GEORGE S. MICHAEL and SUSAN MICHAEL, have pled in their Second Amended Complaint that, Defendants, CHRISTINE LETCHINGER, R. DREW IRVIN, GERALD NELLESSEN and PETER FRIEDMAN, deprived Plaintiffs of their rights under federal law in relation to the use of their property located at 1955 Shore Acres, Lake Bluff, Illinois.

2. Defendants, CHRISTINE LETCHINGER, R. DREW IRVIN, GERALD NELLESSEN and PETER FRIEDMAN, have answered the Second Amended Complaint denying they are legally liable to Plaintiffs, GEORGE S. MICHAEL and SUSAN MICHAEL.

3. That insofar as the claims against Defendants, CHRISTINE LETCHINGER, R. DREW IRVIN, GERALD NELLESSEN and PETER FRIEDMAN, in Plaintiffs' Second Amended Complaint are brought against them in their individual capacity, Defendants, CHRISTINE LETCHINGER, R. DREW IRVIN, GERALD NELLESSEN and PETER FRIEDMAN, are entitled to qualified immunity.

### Second Affirmative Defense
### Legislative Immunity

1. Plaintiffs, GEORGE S. MICHAEL and SUSAN MICHAEL, have pled in their Second Amended Complaint that, Defendants, CHRISTINE LETCHINGER, R. DREW IRVIN,

GERALD NELLESSEN and PETER FRIEDMAN, deprived Plaintiffs of their rights under federal law in relation to the use of their property located at 1955 Shore Acres, Lake Bluff, Illinois.

2.     Defendants, CHRISTINE LETCHINGER, R. DREW IRVIN, GERALD NELLESSEN and PETER FRIEDMAN, have answered the Second Amended Complaint denying they are legally liable to Plaintiffs, GEORGE S. MICHAEL and SUSAN MICHAEL.

3.     That insofar as the claims against Defendant CHRISTINE LETCHINGER, in Plaintiffs' Second Amended Complaint are brought against her for acts taken in her legislative capacity as Village President, Defendant, CHRISTINE LETCHINGER, is entitled to legislative immunity.

### Third Affirmative Defense
### Abstention

1.     Plaintiffs, GEORGE S. MICHAEL and SUSAN MICHAEL, have pled in their Second Amended Complaint that, Defendants, CHRISTINE LETCHINGER, R. DREW IRVIN, GERALD NELLESSEN and PETER FRIEDMAN, deprived Plaintiffs of their rights under federal law in relation to the use of their property located at 1955 Shore Acres, Lake Bluff, Illinois.

2.     Defendants, CHRISTINE LETCHINGER, R. DREW IRVIN, GERALD NELLESSEN and PETER FRIEDMAN, have answered the Second Amended Complaint denying they are legally liable to Plaintiffs, GEORGE S. MICHAEL and SUSAN MICHAEL.

3.     That insofar as the claims against Defendants CHRISTINE LETCHINGER, R. DREW IRVIN, GERALD NELLESSEN and PETER FRIEDMAN, in Plaintiffs' Second Amended Complaint arise from the same operative facts and involve the same parties to the Village's zoning and building code enforcement actions against Plaintiffs GEORGE S. MICHAEL and SUSAN MICHAEL, that are pending before the Circuit Court for the Nineteenth Judicial Circuit of Illinois as consolidated case numbers 08 CH 2706, 08 OV 9302, and 09 CH 6241, and insofar

as Plaintiffs could have brought any claims relating to such facts in that Illinois proceeding, this court should abstain from considering the claims in the Second Amended Complaint until such time as the cases pending before the Illinois court are resolved.

<div style="margin-left:40%">

Respectfully submitted,
CHRISTINE LETCHINGER, R. DREW IRVIN, GERALD NELLESSEN AND PETER FRIEDMAN


By:     /s/Andrew N. Fiske for Howard P. Levine
       One of Their Attorneys

</div>

James L. DeAno #6180161
Laura L. Scarry #6231266
Howard P. Levine #6197286
Emily E. Schnidt #6298680
**DeAno and Scarry, LLC**
53 West Jackson Boulevard
Suite 550
Chicago, IL 60604
Tel: (630) 690-2800 x108
Fax: (312) 564-4125

Peter M. Friedman
Steven B. Varick
James T. Mueller
Andrew N. Fiske #6257283
Holland & Knight LLP
131 S. Dearborn St., 30th Fl.
Chicago, IL 60603
Phone (312) 263-3600
Fax (312) 578-6666